## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISON

| | | |
|---|---|---|
| TANYA DIXON, | ) | **COMPLAINT** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No: 6:23-cv-427 |
| MEDICAL DATA SYSTEMS, INC. | ) | |
| & | ) | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC | ) | **JURY TRIAL DEMANDED** |
| & | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) | |
| & | ) | |
| TRANSUNION, LLC | ) | |
| & | ) | |
| EQUIFAX INFORMATION SERVICES, LLC | ) | |
| Defendants. | ) | |

## COMPLAINT AN

COMES NOW, Plaintiff Tanya Dixon, by and through the undersigned counsel, and for her Complaint against Defendants, Medical Data Systems, Inc. ("MDS"), Portfolio Recovery Associates, LLC ("PRA"), Experian Information Solutions, Inc. ("Experian"), TransUnion, LLC, and Equifax Information Services, LLC ("Equifax") (and together collectively, "Defendants") for violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

## JURISDICTION

1. This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d) and 1681(p).

1

2. Venue is proper because Plaintiff resides here, the acts and transactions occurred here, and MDS, PRA Experian, TransUnion, and Equifax transact business here.

3. Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4. Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5. Plaintiff resides in the city of Tyler, a part of Smith County, Texas 75705.

6. The acts that occurred giving rise to this complaint occurred while Plaintiff was in the city of Tyler, a part of Smith County, Texas 75705, making the Tyler Division a proper venue under 28 U.S. Code § 1391(b)(2).

7. Defendant MDS, a corporation headquartered in Florida, practices as a debt collector throughout the country, including Texas.

8. Defendant MDS attempts to collect alleged debts throughout the state of Texas, including in Tyler city and Smith County.

9. Defendant MDS has actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed itself to the jurisdiction in which Plaintiff resided.

10. Defendant MDS has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Tyler city and Smith County and Defendant attempts to collect alleged debts throughout the state of Texas.

11. Defendant MDS knowingly attempted to collect on a debt allegedly incurred in Tyler, Texas and thus has sufficient minimum contacts with this venue is additionally proper under 28 U.S. Code § 1391(b)(2).

12. Defendant PRA attempts to collect alleged debts throughout the state of Texas, including in Tyler city and Smith County.

13. Defendant PRA has actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed itself to the jurisdiction in which Plaintiff resided.

14. Defendant PRA has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Tyler city and Smith County and Defendant attempts to collect alleged debts throughout the state of Texas.

15. Defendant PRA knowingly attempted to collect on a debt allegedly incurred in Tyler, Texas and thus has sufficient minimum contacts with this venue is additionally proper under 28 U.S. Code § 1391(b)(2).

16. Defendant PRA, a corporation headquartered in Virginia, practices as a debt collector throughout the country, including Texas.

17. Defendant TransUnion, a corporation headquartered in Chicago, IL, practices as a credit reporting agency throughout the country, including Tyler.

18. Defendant TransUnion serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Tyler city and Smith County.

19. Defendant TransUnion has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant TransUnion purposefully availed itself to the jurisdiction in which Plaintiff resided.

20. Defendant TransUnion has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Tyler city and Smith County and Defendant attempts to collect alleged debts throughout the state of Texas.

21. Defendant TransUnion knowingly reported information regarding a Plaintiff domiciled in Tyler, and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(2).

22. Defendant Equifax, a corporation headquartered in Atlanta, GA, practices as a credit reporting agency throughout the country, including Tyler.

23. Defendant Equifax serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Tyler city and Smith County.

24. Defendant Equifax has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant Equifax purposefully availed itself to the jurisdiction in which Plaintiff resided.

25. Defendant Equifax has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Tyler city and Smith County and Defendant attempts to collect alleged debts throughout the state of Texas.

26. Defendant Equifax knowingly reported information regarding a Plaintiff domiciled in Tyler, and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(2).

27. Defendant Experian, a corporation headquartered in California, practices as a credit reporting agency throughout the country, including Tyler.

28. Defendant Experian serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Tyler city and Smith County.

29. Defendant Experian has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant TransUnion purposefully availed itself to the jurisdiction in which Plaintiff resided.

30. Defendant Experian has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Tyler city and Smith County and Defendant attempts to collect alleged debts throughout the state of Texas.

31. Defendant Experian knowingly reported information regarding a Plaintiff domiciled in Tyler, and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(2).

## STANDING

32. Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

33. Defendants' collection activities violated the FDCPA.

34. Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

35. Plaintiff has thus suffered an injury as a result of Defendants conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if she incurs no other injury[.]").

36. "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" Lane v. Bayview Loan Servicing, LLC, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because she alleges that [Defendant] denied him the right to information due to him under the FDCPA."); see also Church v. Accretive Health, Inc., No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

37. "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it

is not a necessary condition." Lane, 2016 WL 3671467 at *4.

## PARTIES

38. Plaintiff, Tanya Dixon (hereafter "Plaintiff"), is a natural person currently residing in Smith County, in the state of Texas.

39. Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

40. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

41. Defendant MDS is a corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 2001 9th Avenue, Ste. 312, Vero Beach, Florida 32960.

42. MDS is engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

43. MDS regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

44. Defendant PRA is a corporation engaged in the business of collecting debts, using mail and telephone, in this state with its principal address at 120 Corporate Blvd., Norfolk, Virginia 23502.

45. PRA is engaged in the business of a collection agency, using the mail, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

46. PRA regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

47. Defendant Experian is a corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

48. Defendant Equifax is a corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

49. Defendant TransUnion is a corporation with its principal place of business located at 555 West Adams Street Chicago, IL 60661.

50. Defendant MDS is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

51. Defendant PRA is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

52. Experian, Equifax, and TransUnion are all a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). Experian, Equifax, and TransUnion regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

    a. Public record information;

    b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

53. Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to a creditor other than MDS and PRA.

54. On a date better known by MDS and PRA, MDS and PRA began to attempt to collect an alleged consumer debt from the Plaintiff.

55. That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purpose.

56. That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

57. The reporting of the alleged debt contains an inaccurate balance.

58. The reporting of the alleged debt contains an inaccurate status.

59. The reporting of the alleged debt contains inaccurate delinquency information.

60. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

61. That MDS and PRA were voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

62. MDS's and PRA's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt. 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

63. On or about 8/5/2022, Plaintiff sent dispute letters to Experian, Equifax, and TransUnion notifying the account with as disputed. **Exhibit A Exhibit B Exhibit C.**

64. These letters provided notice of the inaccurate reporting to Experian, Equifax, and TransUnion.

65. Once Experian, Equifax, and TransUnion received notice of these letters, it was required to provide notice of such disputes and request for re-investigation to the furnisher, in this case MDS and PRA.

66. Experian, Equifax, and TransUnion received the letters sent by Plaintiff.

67. Experian, Equifax, and TransUnion transmitted notice of this dispute to MDS and PRA via an Automated Credit Dispute Verification form ("ACDV").

68. MDS and PRA were required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

69. Alternatively, Experian, Equifax, and TransUnion failed to send notice of the dispute to MDS and PRA after receiving notice of the dispute from Plaintiff.

70. After receiving this notice, in any subsequent voluntary reporting, MDS and PRA must then include the dispute notation on said account. 15 U.S.C. §§ 1692e, 1692e(8). See <u>Sayles v. Advanced Recovery Systems, Incorporated</u>, 865 F.3d 246, 249 (5th Cir. 2017); <u>Brady v. Credit Recovery Co.</u>, 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

71. On or about 12/4/2022, Plaintiff received an updated credit file from Experian. **Exhibit D.**

72. That the credit report was updated on 11/27/2022 by MDS.

73. That the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Experian, and transmitted to MDS.

74. Alternatively, that the updated 12/4/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Experian after Experian failed to notify MDS.

75. On or about 12/4/2022, Plaintiff received an updated credit file from Equifax. **Exhibit D.**

76. That the credit report was updated on 11/1/2022 by MDS.

77. That the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Equifax, and transmitted to MDS.

78. Alternatively, that the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Equifax after Equifax failed to notify MDS.

79. On or about 12/4/2022, Plaintiff received an updated credit file from TransUnion. **Exhibit D.**

80. That the credit report was updated on 11/27/2022 by MDS.

81. That the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TransUnion, and transmitted to MDS.

82. Alternatively, that the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TransUnion after TransUnion failed to notify MDS.

83. On or about 12/4/2022, Plaintiff received an updated credit file from Experian. **Exhibit D.**

84. That the credit report was updated on 11/20/2022 by PRA.

85. That the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Experian, and transmitted to PRA.

86. Alternatively, that the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Experian after Experian failed to notify PRA.

87. On or about 12/4/2022, Plaintiff received an updated credit file from Equifax. **Exhibit D.**

88. That the credit report was updated on 11/1/2022 by PRA.

89. That the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by Equifax, and transmitted to PRA.

90. Alternatively, that the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by Equifax after Equifax failed to notify PRA.

91. On or about 12/4/2022, Plaintiff received an updated credit file from TransUnion. **Exhibit D.**

92. That the credit report was updated on 11/20/2022 by PRA.

93. That the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TransUnion, and transmitted to PRA.

94. Alternatively, that the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TransUnion after TransUnion failed to notify PRA.

95. That the updated 12/4/2022 credit report did not contain updated marked as disputed information.

96. The updated 12/4/2022 credit report contained inaccurate information.

97. MDS and PRA failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

98. MDS and PRA must have voluntarily updated the Plaintiff's alleged account by communicating with Experian, Equifax, and TransUnion.

99. That MDS and PRA furnished information to Experian, Equifax, and TransUnion regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by Experian, Equifax, and TransUnion of the dispute.

100. That MDS and PRA failed to update the account information and mark the account as disputed on the updated 12/4/2022 credit report after Plaintiff disputed the account on 10/26/2022 and was given notice of such by Experian, Equifax, and TransUnion.

101. In the alternative, if MDS and PRA properly updated the account information and marked the account as disputed with Experian, Equifax, and TransUnion after receiving notification of dispute from Plaintiff, then Experian, Equifax, and TransUnion failed to update the account information and mark the account as disputed on the updated 12/4/2022 credit report.

102. That MDS and PRA never properly updated the account information or marked the account as disputed even after receiving information of the dispute from Experian, Equifax, and TransUnion.

103. Alternatively, Experian, Equifax, and TransUnion never updated the account information and marked the account as disputed even after receiving information of the dispute remark from MDS and PRA in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

104. All of MDS's and PRA's actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

105. All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

106. Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the MDS, PRA and/or Experian, Equifax, and TransUnion.

107. Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by MDS, PRA and/or Experian, Equifax, and TransUnion

108. Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by MDS, PRA and/or Experian, Equifax, and TransUnion.

109. Plaintiff has suffered actual harm based on her costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

110. Plaintiff's injury-in-fact is fairly traceable to the challenged representations of MDS, PRA and/or Experian, Equifax, and TransUnion

111. Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions**

112. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

113. Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

114. That because Plaintiff disputed the debt, MDS, and PRA when choosing to contact the consumer reporting agencies, was obligated to inform them of the disputed status of the account. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

115. MDS and PRA used deceptive and misleading tactics when it communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debt was disputed in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

116. MDS's and PRA's collection communications are to be interpreted under the "least sophisticated consumer" standard. See, Goswami v. Am. Collections Enter., Inc., 377 F.3d 488, 495 (5th Cir. 2004); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir.1997) (When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also,

Goswami, 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

117. MDS and PRA violated the Plaintiff's right not to be the target of misleading debt collection communications.

118. MDS and PRA violated the Plaintiff's right to a truthful and fair debt collection process.

119. MDS's and PRA's communications with Plaintiff were deceptive and misleading.

120. MDS and PRA used unfair and unconscionable means to attempt to collect the alleged debt.

121. MDS's and PRA's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to MDS's and PRA's collection efforts.

122. MDS's and PRA's failure to mark a debt as disputed it knows or should know is disputed violates § 1692e, 1692e(8) of the FDCPA.

123. MDS's and PRA's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding her situation.

124. Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

125. Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of MDS's and PRA's conduct.

126. The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. MDS's and PRA's false representations misled the Plaintiff in a

manner that deprived him of her right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

127. Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment.

128. Defendants MDS's and PRA's violation of § 1692e of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Tanya Dixon, prays that this Court:

A. Declare that MDS's and PRA's debt collection actions violate the FDCPA;

B. Enter judgment in favor of Plaintiff Tanya Dixon, and against MDS and PRA, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C. Grant other such further relief as deemed just and proper.

**Count II: Violations Of § 1692d Of The FDCPA – Harassment or Abuse**

129. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

130. Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

131. MDS's and PRA's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

132. MDS and PRA attempted to coerce Plaintiff into paying an alleged debt she otherwise would not have paid by submitting false and inaccurate information to her credit report.

133. MDS and PRA could have no other purpose in doing this except to harm Plaintiff's reputation and deprive him of her ability to receive any type of credit line unless she paid the alleged debts.

134. Defendants MDS's and PRA's violation of § 1692d of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Tanya Dixon, prays that this Court:

    A.    Declare that MDS's and PRA's debt collection actions violate the FDCPA;

    B.    Enter judgment in favor of Plaintiff Tanya Dixon, and against MDS and PRA, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

    C.    Grant other such further relief as deemed just and proper.

## COUNT III: Violations Of § 1692f Of The FDCPA – Misleading Representations & Unfair Practices

135. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

136. Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

137. MDS and PRA attempted to collect a debt by distributing false information that would negatively impact Plaintiff's rights as a consumer, as well as that would harm Plaintiff's financial health.

138. MDS and PRA used unfair and unconscionable means to attempt to collect the alleged debt.

139. MDS's and PRA's violation of § 1692f of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Tanya Dixon, prays that this Court:

    A.    Declare that MDS's and PRA's debt collection actions violate the FDCPA;

    B.    Enter judgment in favor of Plaintiff Tanya Dixon, and against MDS and PRA, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C. Grant other such further relief as deemed just and proper.

**Count IV: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information**

140. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

141. Experian, Equifax, and TransUnion violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

142. As a result of this conduct, action and inaction of Experian, Equifax, and TransUnion, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

143. Experian, Equifax, and TransUnion's conduct, action, and inaction was willful, rendering it liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

144. The Plaintiff is entitled to recovery costs and attorney's fees from Experian, Equifax, and TransUnion in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Tanya Dixon, Prays that this Court:

A. Declare that Experian, Equifax, and TransUnion's credit reporting actions violate the FCRA;

B. Enter judgment in favor of Plaintiff Tanya Dixon, and against Experian, Equifax, and TransUnion, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C. Or, in the alternative, enter judgment in favor of Plaintiff Tanya Dixon, and against Experian, Equifax, and TransUnion, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.  Grant other such further relief as deemed just and proper.

**Count V: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information**

145.  Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

146.  Defendants Experian, Equifax, and TransUnion violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to MDS and PRA; by failing to maintain reasonable procedures with which to filter and verify disputed information in the plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

147.  As a result of this conduct, action and inaction of Experian, Equifax, and TransUnion, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

148.  Experian, Equifax, and TransUnion 's conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

149.  The Plaintiff is entitled to recovery costs and attorney's fees from Experian, Equifax, and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Tanya Dixon Prays that this Court:

A.  Declare that Experian, Equifax, and TransUnion 's credit reporting actions violate the FCRA;

  B. Enter judgment in favor of Plaintiff Tanya Dixon, and against Experian, Equifax, and TransUnion for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

  C. Or, in the alternative, enter judgment in favor of Plaintiff Tanya Dixon, and against Experian, Equifax, and TransUnion, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

  D. Grant other such further relief as deemed just and proper.

### Count VI: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

150. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

151. Defendants Experian, Equifax, and TransUnion violated 15 U.S.C. § 1681s-2(b) by continuing to report the MDS and PRA representation within Plaintiff's credit file with Experian, Equifax, and TransUnion without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the MDS and PRA representation; by failing to review all relevant information regarding same; by failing to accurately respond to MDS and PRA; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the MDS and PRA representations to the consumer reporting agencies.

152. As a result of this conduct, action and inaction of MDS and PRA, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

153. Defendants MDS's and PRA's conduct, action and inaction were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

154. Plaintiff is entitled to recover costs and attorney's fees from MDS and PRA in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Tanya Dixon, Prays that this Court:

    A.    Declare that MDS's and PRA's credit reporting actions violate the FCRA;

    B.    Enter judgment in favor of Plaintiff Tanya Dixon, and against MDS and PRA for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

    C.    Or, in the alternative, enter judgment in favor of Plaintiff Tanya Dixon, and against MDS and PRA, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

    D.    Grant other such further relief as deemed just and proper.

## JURY DEMAND

155. Plaintiff demands a trial by jury on all Counts so triable.

Dated: August 23, 2023

Respectfully Submitted,

**HALVORSEN KLOTE**

By:    /s/ Joel S. Halvorsen

Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hklawstl.com